UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **GENTRY H. JACKSON,** | |
| Petitioner, | |
| v. | CAUSE NO. 2:21-CV-105-JTM-JEM |
| **WARDEN,** | |
| Respondent. | |

## OPINION AND ORDER

Gentry H. Jackson, a prisoner without a lawyer, filed a habeas corpus petition to challenge his conviction for murder under Case No. 45G01-1508-MR-4. Following a jury trial, the Lake Superior Court sentenced him to 45 years of incarceration on June 13, 2016.

## FACTUAL BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Indiana Court of Appeals summarized the evidence presented at trial:

> Jackson is married to Michelle Jackson. Previously, Michelle was married to Alec McCloud for eight to nine years and had five children with him. Two of those children were Justin McCloud and Alexis McCloud Rogers; Justin was twenty-two at the time of trial, and Alexis was nineteen. Michelle asserted that Alec had been abusive towards her during their marriage, and Alec and Jackson had a very antagonistic relationship. Alec was not welcome at Jackson's residence.

> On August 3, 2015, Alexis was living with Jackson and Michelle in Gary. Justin also was at the house that day. At some point on that day, before the sun went down, Alexis returned to the house from an outing and had to knock on the door because she did not have a key. As she was knocking, she saw Alec drive up to the house in his mother's car. Alexis had not spoken to Alec for months and was surprised to see him. Justin opened the door for Alexis and also saw Alec parked outside; he had spoken to Alec earlier and was aware he was in town.
>
> Alexis got into an argument with Michelle after going into the house and mentioning to Justin that their father was outside. Justin went outside while Alexis and Michelle continued arguing. When Michelle noticed that Alec was outside, she yelled at Alexis, "why did [you] bring him over here." Alexis noticed Jackson go into his bedroom, come back out carrying a gun, and go outside. As Jackson walked past Michelle, she said, "make sure that's him." Justin could see that Alec was on his phone, sitting in the car, when Jackson approached the car and said, "I got you now." Justin did not see anything else in Alec's hands besides his cell phone. Jackson then began shooting at the car and eventually fired a total of eight shots. Alec began driving away as Jackson opened fire.
>
> Alec drove for a short distance before wrecking the car. Justin and a friend of his arrived on the scene shortly thereafter. Justin and his friend saw Alec's phone in his lap and nothing else, such as a gun. Police never recovered a gun from Alec or the car. There were five bullet holes in the driver's side front door and one in the rear door. Alec suffered gunshot wounds to his back, abdomen, and buttocks. After undergoing emergency surgery, Alec died.
>
> After the shooting, Jackson took the chamber out of the gun, called 911, reported the shooting, and waited for police to arrive. While waiting, Michelle told Alexis, "Look what you made my husband do. My husband better not go to jail." When police arrived, Jackson told them he had shot Alec because he had seen Alec point a gun at him.

*Jackson v. State*, 86 N.E.3d 455 (Ind. App. 2017). (DE # 5-6 at 2-4.)

In the habeas petition, Jackson argues that he is entitled to habeas relief because the trial court erred by allowing Alexis McCloud-Rogers to testify that Michelle Jackson had threatened her and because the trial record lacked sufficient evidence for the jury to

2

find that he had the requisite mens rea and that he did not act in self-defense. He also argues that trial counsel erred by failing to present evidence of the victim's drug use and criminal history and by failing to depose Alexis McCloud-Rogers, Justin McCloud, and Trent Hester.

## PROCEDURAL DEFAULT

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Brevik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). It does, however, require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at 1025 (internal quotations and citations omitted). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.*

3

Jackson presented his claim that the trial court should not have allowed Alexis McCloud-Rogers' testimony regarding Michelle Jackson's threat and his ineffective assistance of trial counsel claims to the Indiana Court of Appeals and the Indiana Supreme Court. (DE ## 5-3, 5-7, 5-10, 5-13.) However, he did not present the sufficiency of the evidence claims to the Indiana Supreme Court. (DE # 5-7.) Therefore, the sufficiency of the evidence claims are procedurally defaulted, and Jackson offers no basis to excuse this procedural default.

## STANDARD OF REVIEW

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quotations and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in

4

> justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods,* 135 S. Ct. at 1376 (quotation marks and citations omitted). Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted).

## DISCUSSION

### Trial Court Error -- Evidentiary Ruling

Jackson argues that he is entitled to habeas relief because the trial court erred by declining to exclude testimony from Alexis McCloud-Rogers about a threat from Michelle Jackson, her mother and Jackson's wife. "To be of constitutional import, an erroneous evidentiary ruling must be so prejudicial that it compromises the petitioner's due process right to a fundamentally fair trial." *Howard v. O'Sullivan*, 185 F.3d 721, 723–24 (7th Cir. 1999). "This means that the error must have produced a significant likelihood that an innocent person has been convicted." *Id.* "Indeed, because of this high standard, evidentiary questions are generally not subject to review in habeas corpus proceedings." *Id.* Under Indiana law, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the

5

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Ind. R. Evid. 403.

Before trial, trial counsel filed a motion in limine regarding Alexis McCloud-Rogers about a threat from Michelle Jackson. (DE # 6-9 at 69.) Specifically, Alexis McCloud-Rogers initially told the police that she saw the victim with a gun before Jackson confronted him. (DE # 6-2 at 2-13.) About five months later, she told a detective that her prior statement was not true and that she did not see the victim with a gun. She explained that her initial statement was a consequence of Michelle Jackson telling her, "Look what you made my husband do. He better not go to jail." (*Id.*) The prosecution argued that this testimony was necessary to fend off efforts to impeach Alexis McCloud-Rogers, who intended to testify against Jackson at trial. (*Id.*) Trial counsel argued that it was inadmissible hearsay and would be unfairly prejudicial to Jackson due to the risk that the jury would attribute the threat to Jackson. (*Id.*)

The trial court preliminarily granted the motion but ultimately allowed the prosecution to solicit this testimony from Alexis McCloud-Rogers at trial. (*Id.* at 12-13, 148-51.) To address trial counsel's concerns of unfair prejudice, the trial court provided the following limiting instruction:

> We are about the go into a line of questioning where the witness will be allowed to testify to certain statements attributed to her mother, Michelle. Now, typically these are hearsay statements. It would not be admissible, but in this instance, in hearings conducted outside your presence, they are now deemed to be proper and admissible to show the witnesses, this witness' state of mind and her beliefs at the time that she's receiving these statements from Michelle. They are not intended to prove that the statements are actually made. The intent is to show that this witness' state of mind was at the time of receiving the statements were Michelle. I also

6

inform you that these statements attributed to her mother, Michelle, are not attributed to the defendant.

(*Id.* at 151-52.)

Alexis McCloud-Rogers then testified as follows

**Prosecution:** Alexis, right before we broke for the 15 minutes, you had testified that Gentry put the gun down, went in the house, came back out, you believe he made a phone call and then your mother said something to you and then we stopped.

**McCloud-Rogers:** Uh-huh.

**Prosecution:** What was it your mother said to you?

**McCloud-Rogers:** She told me look what I made her husband do and he better not go to jail.

**Prosecution:** Okay. At that point in time, what happens next?

**McCloud-Rogers:** And then I'm like oh my god, I didn't even do nothing. And then after a couple minutes passed, not a couple minutes, a minute passed, and the police show.

\* \* \*

**Prosecution:** The statement you gave that night of August 3, 2015. Were those the same details or different details than you told in court here today?

**McCloud-Rogers:** Different details.

**Prosecution:** Can you tell the ladies and gentleman of the jury why you told the different statement on August 3?

**McCloud-Rogers:** My mom threatened me.

**Prosecution:** Okay. And what did she say to you that you took as a threat?

**McCloud-Rogers:** Look what you made my husband do. My husband better not go to jail.

**Prosecution:** Okay. Anything else she said to you?

7

> **McCloud-Rogers:** No.
>
> **Prosecution:** And you felt threatened by those?
>
> **McCloud-Rogers:** Yes.
>
> **Prosecution:** And at some point in time did you go back to the police station and give a different statement?
>
> **McCloud-Rogers:** Yes.

(*Id.* at 152-57.) Michelle Jackson testified that she was at the Jackson residence to hear the shooting but did not testify that she saw it or otherwise had personal knowledge as to whether or not Jackson had committed a crime or merely acted in self-defense. (DE # 6-3 at 140-47.) No other evidence in the record suggests that Michelle Jackson had such personal knowledge.

On direct appeal, Jackson argued that the trial court erred in allowing the threat testimony. (DE # 5-3 at 10-13.) He maintained that it had no probative value because it did not speak directly to whether Jackson murdered the victim or whether he acted in self-defense. (*Id.*) He further maintained that it was unfairly prejudicial, arguing that, "[b]ecause Michelle is Gentry's wife, who testified on behalf of her husband, it is likely that the jury's perception of Gentry was intertwined with hers." (*Id.*) The Indiana Court of Appeals rejected the claim, finding that the testimony was necessary to explain why Alexis McCloud-Rogers provided a police statement that was inconsistent with her testimony at trial against Jackson. (DE # 5-6 at 5-10.) The appellate court further reasoned that, given the trial court's limiting instruction, there was no risk of the

8

prosecution attempting to use the testimony as evidence of Jackson engaging in uncharged misconduct or as an admission of guilt. *Id.*

After reviewing the record, the court cannot conclude that the trial court's ruling on the threat testimony was an error that "produced a significant likelihood that an innocent person has been convicted." *See Howard*, 185 F.3d at 724. To start, the court agrees that the threat testimony provided necessary context because Alexis McCloud-Rogers was a key witness at Jackson's trial who the defense intended to discredit with prior inconsistent statements and because the threat testimony explained why she gave the police information that contradicted her testimony at trial. The court also agrees that the threat testimony was not unfairly prejudicial and that Jackson's concerns that the jury would attribute the threat to him were unfounded. The trial court expressly advised the jury against such attribution. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). And even without the limiting instruction, it is unclear why the jury would have attributed the threat to Jackson given its context -- it occurred in the immediate aftermath of the shooting without Michelle Jackson having any opportunity to consult with Jackson and without any personal knowledge as to how or why the shooting occurred. Because Jackson has not demonstrated an erroneous evidentiary ruling, the claim that the trial court should have excluded the threat testimony is not a basis for habeas relief.

<u>Ineffective Assistance of Counsel -- Victim Drug Use and Criminal History</u>

Jackson argues that he is entitled to habeas relief because trial counsel provided ineffective assistance by failing to present sufficient evidence of the victim's drug use

9

and criminal history. More specifically, he argues that trial counsel should have presented medical witnesses to rebut the prosecution's argument that the victim could have tested positive for methamphetamine as a result of prescription medication and that trial counsel should have presented certified records of the victim's criminal history.

To prevail on an ineffective assistance of counsel claim in the State courts, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91.

The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under *Strickland* "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now

whether the state court unreasonably applied *Strickland*." *McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *Id.*

At trial, trial counsel highlighted the portions of the autopsy report showing that the victim had tested positive for methamphetamine. (DE # 6-2 at 105-07; DE # 6-3 at 126-27.) He also established the victim's history of drug use and criminal behavior through Michelle Jackson's testimony and established that Jackson was aware of this history through Jackson's testimony. (DE # 6-3 at 120-29, 200-04.) At closing, the prosecution argued:

> We know there was marijuana in Mr. McCloud's system and, okay, methamphetamines, I have no idea. I mean, but let's not sit here and speculate that he was out smoking meth. Methamphetamine in your system can come from a number of things. It can come from prescription medicine. He was just at the hospital treated for an hour while they tried to save his life. I have no idea how it happened. I have no idea how it got there and you should not speculate.

(DE # 6-4 at 127-28.)

In an effort to show that Jackson had a reasonable basis to fear the victim, trial counsel attempted to introduce a report from the child services agency for the State of California that included a section on the victim's criminal history. (DE # 6-3 at 200-04.) The trial court declined to admit the report, finding that it included many uncorroborated allegations and was unfairly prejudicial to the prosecution. (*Id.*) However, the trial court allowed trial counsel to read from the report while asking Jackson whether he was aware of specific information from the report, and trial counsel proceeded as follows:

11

>**Trial Counsel:** So Defendant's 9, this document you get in the springtime, it's from the Superior Court of California and Los Angeles; is that correct?
>
>**Jackson:** Correct.
>
>**Trial Counsel:** Alright. Now, you read through it, Michelle's reading through it. And is it fair to say this report is talking about an investigation about Alec with regard to the kids he's got out there in LA, including Elijah?
>
>**Jackson:** Correct.
>
>**Trial Counsel:** That's what this report's about, is that correct?
>
>**Jackson:** Correct.
>
>**Trial Counsel:** On page five, do you recall reading that Alec McCloud has a history of illicit drug use and is a current use of cocaine and marijuana which renders the father incapable of providing regular care and supervision of the child? Do you remember reading that? Do you remember reading on February 7, 2015, the father had a positive toxicology screen for cocaine and marijuana?
>
>**Jackson:** Correct.
>
>**Trial Counsel:** That he had a criminal history of conviction of possession of narcotic, controlled substance, and that his illicit drug use endangered the child's physical health and safety, places the child at risk of serious physical harm. Do you remember reading that?
>
>**Jackson:** Correct.
>
>**Trial Counsel:** Did that form part of your picture, your vision of Alex McCloud and what he was about? Did that factor in to you?
>
>**Jackson:** Absolutely.

*Id.*

At the post-conviction stage, Dr. Reuben Rutland, a trauma surgeon, testified that methamphetamine was not used to treat traumatic injuries and that he also consulted with anesthetists and emergency room physicians, who indicated that

methamphetamine had no medical use in their respective areas of expertise. (DE # 6-12 at 5-18.) On cross-examination, Dr. Rutland testified that he did not know what medications the victim took prior to the shooting. *Id.* He also conceded that he was unfamiliar with which medications could cause positive tests for methamphetamines, noting that he was not a pharmacology expert. *Id.*

The Indiana Court of Appeals rejected Jackson's claim regarding medical witnesses, noting that Dr. Rutland did not know whether medications outside of a trauma setting could result in a false positive for methamphetamine and that Jackson did not demonstrate that any medical witness could have identified the source of the methamphetamine found in the victim's system. (DE # 5-12 at 8-10.) The appellate court further found that, even if trial counsel had presented such evidence, it would have been unlikely to affect the outcome of the decision because the jury had been made aware of the presence of methamphetamine in the victim. *Id.*

The Indiana Court of Appeals also rejected the claim regarding the victim's criminal history, noting that the victim's criminal history was relevant for purposes of self-defense to the extent that Jackson was aware of it, but that Jackson did not submit the certified criminal records into evidence or describe the totality of what he knew of the victim's criminal history at the time of the shooting. (*Id.* at 15-17.) The appellate court further noted that trial counsel was able to present some evidence of the victim's criminal history through Jackson's testimony and that Jackson had not demonstrated that he knew that the victim had committed any crimes that had not already been presented to jury. *Id.*

13

After reviewing the record, the court cannot find that the State court made an unreasonable determination on these claims. To start, Jackson cannot demonstrate prejudice with respect to the trial counsel's failure to obtain certified records of the victim's criminal history without providing any evidence as to what such certified records would say. Moreover, the relevant issue at trial was not whether the victim had committed crimes but whether Jackson was aware of the victim's crimes at the time of the shooting. It is unclear why the testimony of Gentry and Michelle Jackson did not suffice to establish such awareness, particularly given that the prosecution did not dispute the victim's criminal history or Gentry Jackson's understanding of it.

With respect to the victim's drug use, trial counsel may have been able to establish that the victim did not receive medication that caused him to test positive for methamphetamine from medical staff after the shooting, but Jackson has not shown that trial counsel would have been able to establish that the victim did not have a prescription for such medication or that the positive test resulted from illegal drug use. Further, trial counsel presented the jury with ample evidence to find that the victim was under the influence of illegal drugs, including Michelle Jackson's testimony regarding the victim's history of drug use and the autopsy report indicating the presence of methamphetamine and marijuana. Additionally, it is unclear that even conclusive evidence that the victim had used methamphetamine on the day of the shooting would have had any effect on the jury's findings. The victim's drug use was only one of the many issues raised at trial regarding Jackson's entitlement to self-defense, and the record contained sufficient evidence for the jury to find that the victim was under the

14

influence of methamphetamine even without medical witnesses. Though the record does not foreclose all possibility that such evidence might have had some persuasive force with the jury, the State court determination that it would likely have no effect was not unreasonable.

### Ineffective Assistance of Counsel -- Depositions

Jackson argues that he is entitled to habeas relief because trial counsel failed to depose Alexis McCloud-Rogers, Justin McCloud, and Trent Hester. At trial, each of these witnesses testified on behalf of the prosecution, and, critically, they testified that they did not see the victim with a gun when he was waiting in the vehicle before the shooting or as they examined him and the vehicle after the shooting. With respect to Alexis-McCloud Rogers, Jackson maintains that trial counsel should have deposed her before she informed the detective that she did not see the victim with the gun because it would have preserved her exculpatory testimony for use at trial. With respect to Justin McCloud and Trent Hester, Jackson maintains that trial counsel should have deposed them because it may have provided him with additional material for cross-examining them.

At trial, trial counsel impeached Alexis McCloud Rogers as follows:

**Trial Counsel:** Do you recall telling Gentry as he came outside specifically telling Gentry I think he or I think my father has a gun. Do you remember that?

**McCloud-Rogers:** Do I remember that or telling you that?

**Trial Counsel:** Do you remember saying that to Gentry?

**McCloud-Rogers:** No.

**Trial Counsel:** Do you remember telling me that you said it to Gentry?

**McCloud-Rogers:** Yes.

**Trial Counsel:** Do you recall your father saying to Gentry come here, I want to talk to you?

**McCloud-Rogers:** No.

**Trial Counsel:** Do you recall telling me that that's what he said?

**McCloud-Rogers:** Yes.

**Trial Counsel:** So your testimony today, even though August 3, 2015, and August 24, 2015, you said you saw your father with a gun?

**McCloud-Rogers:** Uh-huh.

**Trial Counsel:** Today you're telling us oh, he didn't have a gun. Is that your testimony?

**McCloud-Rogers:** Yes.

(DE # 6-2 at 168-69.)

At the post-conviction stage, trial counsel testified that he does not typically depose witnesses because doing so might also provide useful information for the prosecution. (DE # 6-12 at 18-46.) He noted his concern that a deponent might testify in favor of the prosecution but be unavailable for trial, which could result in the introduction of the deposition transcript at trial without any further opportunity for trial counsel to cross-examine them. (*Id.*) He also noted his concern that certain lines of inquiry raised the risk of prematurely revealing the defense strategy to the prosecution. (*Id.*) With respect to Alexis McCloud-Rogers, trial counsel testified that he was able to impeach her with her prior statement even without deposition testimony from her. (*Id.*)

16

Trial counsel allowed that he may have been able to introduce favorable deposition testimony from her as substantive evidence, while he could use her statements to him and the police only to impeach. (*Id.*) However, he believed that this distinction would be unlikely to affect the jury's consideration of the prior inconsistent statement. (*Id.*) Regarding Justin McCloud and Trent Hester, trial counsel noted that he had an opportunity to question these witnesses under oath at a pretrial hearing and again cited his typical practice of avoiding depositions. (*Id.*)

The Indiana Court of Appeals rejected the claim that trial counsel should have deposed Alexis McCloud-Rogers, reasoning that, by neglecting to call her as a witness at the post-conviction hearing, Jackson failed establish how she would have testified if she had been deposed. (DE # 5-12 at 10-13.) The appellate court rejected the claim regarding Justin McCloud and Trent Hester similarly reasoning that Jackson had demonstrated how they would have testified at deposition and further found that trial counsel declined to depose witnesses as a matter of strategy. (*Id.*)

After reviewing the record, the court cannot find that the State court made an unreasonable determination on these claims. To Jackson's point, depositions may have produced favorable testimony for the defense, but they may have simply resulted in a duplication of the testimony at trial. Even worse, they may have produced favorable testimony for the prosecution or given them a tactical advantage by giving them a preview of the defense's trial strategy. Given these strategic considerations, it was not unreasonable for the State court to find that the decision not to depose witnesses was a reasonable strategic decision. Nor was it unreasonable for the State court to find that

17

Jackson had not demonstrated prejudice. At trial, Alexis McCloud-Rogers conceded that she initially told trial counsel and the police that she saw the victim with the gun, so the jury was allowed to consider this undisputed evidence in some fashion. Further, whether McCloud-Rogers would have repeated her initial statements at a deposition or whether she would have denied them for the first time is unclear, and the record contains no evidence to suggest that Justin McCloud or Trent Hester, each of whom never wavered on whether they saw the victim with a gun, would have testified any differently than they did at trial. Therefore, these claims are not a basis for habeas relief.

### Ineffective Assistance of Trial Counsel -- Cumulative Effect

Finally, Jackson argues that, even if no individual error by trial counsel was sufficiently prejudicial to warrant habeas corpus relief, the court should grant him relief based on the cumulative prejudice of the errors. "[P]rejudice may be based on the cumulative effect of multiple errors. Although a specific error, standing alone, may be insufficient to undermine the court's confidence in the outcome, multiple errors together may be sufficient." *Malone v. Walls*, 538 F.3d 744 (7th Cir. 2008).

The court has identified no trial counsel error. The court further finds that Jackson has not demonstrated that following his proposed course of action in its entirety would have been likely to change the outcome of the case. He has not offered the victim's criminal records for the court's review, nor has he demonstrated that Alexis McCloud-Rogers, Justin McCloud, or Trent Hester would have testified differently at deposition than they did at trial. And the court has already concluded that the absence of additional evidence of drug use, standing alone, is insufficient to undermine

18

confidence in the outcome of the case. Therefore, the claim of cumulative error is not a basis for habeas relief.

## CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this order, there is no basis for encouraging Jackson to proceed further.

For these reasons, the court **DENIES** the habeas corpus petition (DE # 1); **DENIES** a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and **DIRECTS** the clerk to enter judgment in favor of the Respondent and against the Petitioner.

**SO ORDERED.**

Date: April 15, 2022

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT